## Power's Appeal.

63   443
151   322
63   443
182   495

1. Sons of a decedent received advancements from their father and executed receipts to him for the sums with releases in full of their shares of his estate. *Held*, on his death intestate, that they were estopped from claiming any part of his estate.

2. The rights of an heir as to real or personal estate depend in Pennsylvania on statutes excluding the heirs at common law.

3. An heir or expectant devisee or legatee may, in the lifetime of the testate or intestate, sell or assign his expectant or contingent interest, and if the contract be on a valuable consideration equity will enforce it.

4. A father may make a contract with a child which will bar all his claim as heir to his father's estate.

5. Such release by the child should be clear and unambiguous; the intention should be manifest.

October 29th and 30th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Westmoreland county*: Of October and November Term 1869, No. 161.

In John Power's estate.

John Power died intestate on the 19th of December 1865, leaving seven children, viz.: James S. Power, John F. Power, William Power, Margaret, intermarried with Jacob Speers, Harriet Power, Mary Ellen Power and Frances, intermarried with B. Houseman and the children of Jane Thomas, a deceased daughter; of Evan W. Power, a son, and Hannah Fry: the last-named son and daughters having died in the lifetime of the decedent. The decedent died seised of a tract of about 237 acres of land and owning personal property amounting to $5695.39. Proceedings in partition were had and the land was appraised by the inquest at $225 per acre. John Armstrong, Esquire, was appointed auditor to ascertain what advancements had been made to the intestate's children. He found amongst other things, that on the 13th of November 1838, James S. Power had been advanced $1000; on the 28th of August 1848, William Power had been advanced $4000, the price of a tract of 100 acres of land that day conveyed to him by his father; on the 30th, John F. Power was advanced to the same amount; and in the same manner Evan W. Power on the 26th of November 1853, was advanced $1500, besides $1834 in various sums at different times. On receiving advancements, these sons acknowledged in writing under seal that the sums received were in full of any share or dividends coming to them respectively out of their father's real and personal estate; John, William and Evan executed formal releases "of and from the said share or dividend of the estate aforesaid, and of and from all actions, suits, payments, accounts, reckonings, claims and demands whatever, for or by reason thereof."

The auditor decided that "James S. Power, John F. Power,

William Power and Evan W. Power, heirs, are estopped from making any further claim to the real or personal estate of John Power, deceased. Their releases bind them." He reported accordingly. The court on exceptions confirmed the report.

John P. Power for himself and the children of Evan W. Power appealed to the Supreme Court and assigned the decree of confirmation for error.

*E. Cowan,* for appellants, cited: Hitchcock *v.* Hitchcock, 11 Casey 393; Lipman's Appeal, 6 Id. 180.

*H. D. Foster,* for appellees, cited : 2 Williams on Executors 1101, 1105; Kenney *v.* Tucker, 8 Mass. 141; Miller's Appeal, 7 Casey 339.

The opinion of the court was delivered, July 7th 1870, by

READ, J.—John Power died intestate on the 19th December, 1865, leaving issue seven children living, and the issue of a deceased son and of two deceased daughters. At the time of his death, he was the owner of a tract of land containing 237 acres and 67 perches, which was appraised by the inquest at $225 per acre, but, under an order of court for the sale of it, the highest bid offered for it was $150 per acre. His personal estate amounted to $5695.39.

The father, in his lifetime, had divided a portion of his estate amongst his four sons, James Power, John F. Power, William Power and Evan W. Power, and each contracted to receive their respective portion, in full of his share of the real and personal estate of their father, and released all claim thereto. A sum of $3000 was given to a married daughter, which had been held to be only an advancement, and not a purchase of her right as an heir. If this arrangement is sustained, which it should be, in strict justice, the persons entitled, as heirs, to the real and personal estate of the decedent, are the two unmarried daughters, Harriet Power and Mary Ellen Power, the two married daughters, Margaret Speers and Frances Houseman bringing in their respective advancements, the children of Jane Thomas, deceased, and the children of Hannah Fry, deceased.

The rights of an heir, as to either real or personal estate, depend in Pennsylvania, upon statutory enactments excluding the heirs at common law. An heir, or an expectant devisee or legatee, may, in the lifetime of the intestate or testate, in equity, sell or assign his expectant or contingent interest, whatever it may turn out to be, upon the death of the person from whom it may come, which contract, if made upon a valuable consideration, a court of equity will enforce. If so, there can be no reason why a father

should not make such a contract with a son, which should entirely
bar all his claim as an heir to any part of his parent's estate.

There is no lack of authority on this question. The general
doctrine as to the assignment of an expectancy, is ruled in Hobson
v. Trevor, 2 Peere Williams 191; Beckley v. Newland, Id. 182;
Holroyd v. Marshall, 10 House of Lords Cases 19; and is well
stated in Snell's Principles of Equity, p. 72: " A mere expectancy,
therefore, as that of an heir at law, to the estate of an ancestor, or
the interest which a person may take, under the will of another,
then living, non-existing property, to be acquired at a future
time, as the future cargo of a ship, is assignable in equity for
valuable consideration; and where the expectancy has fallen into
possession, the assignment will be enforced:" 2 Story Com. ss.
1040, 1040 c., Smith's Equity Manual 231–2. "The widow's
title, however, under the statute (of Distributions), may be barred
by a settlement before marriage, excluding her from her distribu-
tive share of her husband's estate:" 2 Williams on Executors, 6th
ed., 1378; "The widow's title by the custom, as it has been
already shown of her title under the statute, may be barred by
settlement or agreement, before marriage:" 2 Williams on Exe-
cutors 1418; so in regard to a child: Id. 1426.

" The interest which a child has in his orphanage part, is a mere
contingency, and no present right, and therefore a release of it is
not valid, in point of law; but, if founded on a valuable conside-
ration, it shall operate as an agreement, and be binding in equity.
Therefore, a freeman's child, if of age, may, in consideration of a
present fortune, waive all claim to the orphanage share; as where
a father, on the marriage of his daughter, who had attained
twenty-one years, agreed to give her 3000l., and she covenanted
to receive it in full of such share, this was held in equity a good
bar to the custom."

It was an extinguishment of her right. So in the case of Sul-
lings v. Richmond, 5 Allen 187, and Tarbell v. Tarbell, 10 Id.
278, the equitable rule triumphs, where it was held that "an ante-
nuptial contract, by which a woman agrees to relinquish her
distributive share of her intended husband's estate, will be en-
forced in equity, if entered into understandingly, for an adequate
consideration, and without fraud or misrepresentation on his
part."

" I entirely agree," says the present Chief Justice, "that to
give an instrument the effect of a release of all future interest in
an estate to which one is an heir, it should be clear and unambi-
guous. The intention should be manifest:" Miller's Appeal, 7
Casey 340. This exactly describes the case before us; the inten-
tion is manifest, and the language is clear and unambiguous, and
admits of but one interpretation. But we have direct and posi-
tive authority, in two cases in Massachusetts, Quarles v. Quarles,

SUPREME COURT · *[Pittsburg*

4 Mass. 680, which is expressly reaffirmed in Kenney *v.* Tucker, 8 Id. 143, where it was held, that, "where a child, in consideration of a sum paid by his father, by way of advancement, releases his claim to his share of the inheritance, although it may appear that the sum so paid was much less than his purparty of his father's estate, at his death would have been worth, it shall bar him of his share or purparty."

The language of the sealed instrument executed by John F. Power, Jr., is peculiarly clear and explicit, and is dated 30th of August 1848. It acknowledges the receipt from his father of the sum of $4000, being the price or value of 100 acres of land, part of the tract of land for which my said father has this day executed to me and my heirs and assigns, a deed of conveyance, in full satisfaction and payment of all such sum or sums of money, share or shares, purparts and dividends, which may or might hereafter become due, owing, payable, or belonging to me, by any means whatever, for or on account of my full share, part or dividend of the real and personal estate of my said father, and therefore, "I, the said John F. Power, Jr., do, by these presents, release, acquit and for ever discharge my said father, his heirs, executors, administrators and assigns, of and from the said share or dividend of the estate aforesaid, and of and from all actions, suits, payments, accounts, reckonings, claims and demands whatever, for or by reason thereof."

This land had been enjoyed by the said John F. Power, Jr., for 17 years, at the death of the decedent, and all the profits taken by him, and is now said to be worth $20,000. If the release is invalid, it would be charged as an advancement only, at its original price, without interest.

It is clear, however, that the appellant's claim to any part of the real and personal estate of the decedent, is barred by his own deliberate act, done twenty-one years ago.

The claim of the children of Evan W. Power is governed by the same ruling, and is also barred.

The court below were therefore right in dividing the real and personal estate of the decedent amongst the daughters and the children of the deceased daughters of the intestate.

> Decree affirmed, and appeal dismissed, at the costs of the appellants.