314

**SMITH v. HARRAH et al.**
No. 5369.

Court of Appeals of District of Columbia.
Argued June 3, 1931.
Decided June 29, 1931.

Wm. E. Richardson, of Washington, D. C., for appellant.

Leo A. Rover, Daniel P. McDonald, John R. Benney, and Daniel Dunning, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

GRONER, Associate Justice.

Smith, plaintiff below, whom we shall call plaintiff, filed a bill in the Supreme Court of the District against one Charles J. Harrah, in which he joined as defendants the Secretary of State and the Secretary of the Treasury. All the parties are citizens of the United States.

The bill alleges that during 1916, and prior thereto, the defendant Harrah operated in Cuba a railroad primarily for the transportation of sand; that in 1917 or thereabout the railroad was destroyed by the Cuban government, and in 1929 an agreement was entered into between Cuba and the United States for the appointment of arbitrators to determine Harrah's interest in the property destroyed and the amount of damage sustained, and that this arbitration resulted in an award of $350,000, which was paid to the Department of State for the account of Harrah. The bill further charges that Harrah's railroad was unlawfully on plaintiff's land, and that plaintiff is entitled to have a part of the award paid to him. In an amended bill, filed November 3, 1930, plaintiff states his claim as follows: "That because of the fact that the aforesaid railroad was built in and upon the lands so owned by the plaintiff and by reason thereof, the right, title and ownership in and to the aforesaid railroad and the buildings, switches and appurtenances so built on said land so owned by the plaintiff thereby became and were fixtures or attachments to said land, and were thereby the property of the plaintiff, * * * and the said Harrah, by including the said property of the plaintiff in the amount for which he asked compensation for damages, thereby became liable to account and deliver to the plaintiff so much of said fund paid as indemnity as represented the value of the plaintiff's property."

Motion was made in the lower court to dismiss the bill and the amended bill, and this was granted; the lower court holding that the fund being then in the hands of the Secretary of State, who had discretion as to its disposition, the court was without jurisdiction. Since the case was heard below, the certificate required under the law to be made by the Secretary of State to the Secretary of the Treasury, as to the person entitled to the fund, has been made, and the matter has passed beyond his control, and the fund is in

the hands of the Secretary of the Treasury, ready for distribution.

In line with Orinoco Co., Ltd., et al. v. Orinoco Iron Co., 54 App. D. C. 218, 296 F. 965, 969, affirmed by the Supreme Court in Mellon, Secretary v. Orinoco, 266 U. S. 121, 45 S. Ct. 53, 69 L. Ed. 199, we think there is no longer any question that on a bill with proper averments the court, in the circumstances involved here, would have jurisdiction to inquire as to the parties entitled to the fund, and to require it to be paid over to a receiver pending such orders as the court might make with relation thereto.

We proceed, therefore, to inquire whether the present bill meets this test. We think it does not, because it fails to charge facts sufficient to constitute a claim to an equitable lien on the fund involved and likewise facts as the result of which defendant Harrah might be regarded as a trustee ex maleficio. The allegations of the bill of complaint place the plaintiff, Smith, and the defendant Harrah at all times in antagonistic positions, nor is there anything which charges a trust relationship. The substance of the bill is that, because the railroad was built in part on plaintiff's land, a portion of the award belongs to him, but there is nothing to show that he ever made any protest against the occupancy of his land, or that he ever asserted any right thereto against Harrah. Neither is there anything to show that he ever protested to the Cuban government or the government of the United States as to the destruction of the railroad, or asserted any claim growing out of the destruction before the arbitrators under the international agreement, or took any action of any kind at any time prior to the making of the award to establish either a claim to the property or a claim to the fund arising out of its destruction. He stood by for a period of nearly fourteen years without taking any steps or doing any act to protect his interests, if he had any. Presumably he knew that his government had entered a convention with the government of Cuba to determine the ownership of the railroad and the indemnity to be paid for its destruction, and presumably he knew also that the agreement provided that the Commissioner should determine if Harrah had a right to make claim as the owner of the railroad, and, in the event he had, what indemnification he should receive for the damage done, and it was not until the first question was decided in Harrah's favor and the amount due determined that the plaintiff undertook to assert any rights or make any claim to the fund.

In these circumstances, we think the case is clearly distinguishable from the Orinoco Case, supra. In that case, the controversy grew out of the ownership of a fund of $385,000 received by the Secretary of State from Venezuela, resulting from the action of Venezuela in canceling a concession to the Orinoco Company, Limited. This company had assigned its rights to the Orinoco Iron Company, and the latter had developed the property and expended a large sum of money in the operation. The award and settlement of Venezuela had been made at the instance of the Limited Company, but the basis of the claim of the Limited Company was the loss sustained by the Iron Company. After the award, the Iron Company brought suit as the beneficiary of what remained of the fund, and set out the fact of assignment to it of the concession, its investment, and its loss, and that the latter formed the basis for the award. In these circumstances, we held, "In view of this we are convinced that the iron company has a lien ex maleficio upon the balance of the award in the treasury of the United States." The present case, as we have shown, is entirely different. There is no averment of confidential relationship or of contract between the plaintiff here and Harrah, nor averment that plaintiff ever asserted anywhere prior to the award any claim to any part of the property or the fund. There is therefore no claim that Harrah by fraud or the violation of a fiduciary relationship obtained the award, or any fact alleged through which to impress a constructive trust upon the property in favor of the plaintiff. There is not even in the bill an allegation that the plaintiff was the owner of the land when the destruction of the railroad occurred, nor enough otherwise to conclude that, even if he was, the fixtures placed on the land were not trade fixtures, removable by the company at will. The lack of equity, the laches of the plaintiff in sleeping on his rights, if he had any, the vague character of the allegations, failure to assert a definite fixed lien on the fund, all present such a case as we think is without equity, and which therefore make it our duty to affirm the decree of the lower court.

Affirmed.