## CASTELL v. UNITED STATES.
### No. 268.

Circuit Court of Appeals, Second Circuit.
July 12, 1938.

Jay E. Whiting and Albert G. Avery, both of New York City (John Enrietto, of Washington, D. C., and Albert G. Avery and Jay E. Whiting, both of New York City, of counsel), for plaintiff-appellee-appellant.

Lamar Hardy, U. S. Atty., of New York City (Irvin C. Rutter, Asst. U. S. Atty., of New York City, and Frederick J. Rita, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action is brought by the ancillary executor of the estate of Beta Isenberg to recover income taxes. The complaint alleges that certain shares owned by Mrs. Isenberg were unlawfully seized under the Trading With The Enemy Act, 50 U.S.C.A. appendix § 1 et seq., by the Alien Property Custodian in February, 1918, and sold by the latter during the years 1919 and 1920; that the proceeds were administered by him and returned to Mrs. Isenberg less certain amounts for the recovery of which this action was brought. The complaint also alleges that during the time the fund was administered by the Alien Property Custodian, income tax returns for the calendar years 1919 and 1920 were prepared on behalf of Mrs. Isenberg and that the tax

as shown on these returns was paid by the Alien Property Custodian to the Collector of Internal Revenue for the District of Maryland. It further alleges that refunds out of the amounts so paid were made but sums in the amounts of $150,027.18 and $14,937.88 were retained as the taxes due for the years 1919 and 1920 respectively.

The complaint as amended set forth four causes of action. The third and fourth causes of action were dismissed and no appeal from such dismissal was taken. The first cause of action was based on Section 18(c) of the Settlement of War Claims Act which went into effect on March 10, 1928, 50 U.S.C.A. appendix § 24, and provided that amounts realized from the sale of property by the Alien Property Custodian might at the option of the taxpayer be taxed at the rate of 30%. The tax had, however, been computed at the regular rates and recovery of the difference, that is, of $70,879.62 for the year 1919, and of $1,833.61 for the year 1920, was sought under this cause of action.

The second cause of action was based on Section 18(d) of the Settlement of War Claims Act, 50 U.S.C.A. appendix § 24(d), which provides that property sold by the Alien Property Custodian "shall be considered as having been compulsorily or involuntarily converted" within the meaning of the income tax act. Gains so realized in certain specified circumstances are not to be recognized in computing taxable income. Under Section 18(d) refunds paid on account of income taxes for the years 1919 and 1920 were sought, that is, $134,522.86, for the year 1919, and $10,126.92 for the year 1920, or a total of $144,649.78.

On a motion by the plaintiff the District Court ordered that a summary judgment should be entered in favor of the plaintiff for $72,711.80 on the first cause of action, and for $144,649.78 on the second cause of action, provided that the total recovered on both causes of action should not exceed $144,649.78. A cross-motion by the defendant for a summary judgment dismissing these causes of action was denied. From a judgment entered for the plaintiff in pursuance of the foregoing order on October 7, 1937, the present appeal was taken. We think that the judgment for the plaintiff should be reversed, that the cross-motion to dismiss the first and second causes of action should be granted and both of those causes of action should be dismissed.

The motion of the defendant to dismiss the first and second causes of action was made on the ground that the claims asserted in both had been released. We think it clear that such claims were released because of the following facts:

On April 17, 1925, Mrs. Isenberg instituted a suit in the Supreme Court for the District of Columbia under Section 9(a) of the Trading With The Enemy Act, 50 U.S.C.A. Appendix § 9(a). On February 20, 1926, she obtained a decree in that suit against the Alien Property Custodian and the Treasurer of the United States ordering them to deliver to the plaintiff all of the property held under the seizure, and from that decision an appeal had been taken by the defendants to the Court of Appeals of the District of Columbia. While the appeal was pending, a settlement was agreed upon under which the defendants consented to the entry of an order dismissing the appeal and agreed to pay to Mrs. Isenberg all of the money and to deliver to her all of the property which they had been ordered to turn over to her by the decree of the Supreme Court of the District of Columbia, with the exception of certain income taxes which the Alien Property Custodian had paid out of the trust for several years past including those for the years 1919 and 1920 which are the subject of the present action. Under the terms of the settlement Mrs. Isenberg admitted in the following language that the taxes had been properly ascertained and were due and owing from her:

"The said Beta Isenberg consents that there may be withheld by said defendants from the money or other property to which she is entitled under the said decree of the Supreme Court of the District of Columbia an amount sufficient to pay said taxes which she hereby admits to be properly assessed and due and owing by her, together with all interest which may be due to the United States thereon, and in consideration of the premises the plaintiff hereby forever waives any right which she may now have or which may be given to her by future legislation of any kind or character whatsoever, to make any claim against the United States or any officer, agent, or agency thereof for the refund of the sum so withheld or any part or portion thereof."

The instrument further provided that in consideration of the foregoing consent and of the receipt of the money and other property to which she was entitled under the

decree of the Supreme Court of the District of Columbia, with the exception above noted, Beta Isenberg did "hereby release and forever discharge" the Alien Property Custodian and other officials "from any and all rights, claims and demands of every kind, character and description which she may have in respect to the matters in question, or based upon or arising out of the said suit or the said decree of the Supreme Court of the District of Columbia or the Treasurer of the United States, or any officer, employee, agent or agency of the United States."

This instrument was executed on behalf of Mrs. Isenberg by Alexander Wendroth Sielcken, her attorney in fact under a power of attorney executed by her in Bremen under date of August 21, 1925, of the broadest scope, empowering him, among other things:

"(a) To ask, demand, sue for, collect, receive, and give acquittances for, all sums of money, debts, accounts and other demands whatsoever, which are or shall become due, owing, and payable to me by any person or persons, corporation or corporations, firm or firms, association or associations, and to compromise, adjust, and settle upon such terms as he may deem proper, any of such debts, accounts, and other demands; and upon receipt thereof to give all receipts, acquittances, or other sufficient discharges for me and in my name to make, seal and deliver;

"(b) To enter into, contract or contracts, on my behalf, with any attorney or attorneys for the prosecution of any claim or claims which I now or hereafter may have against the United States of America or any Department thereof, the Alien Property Custodian of the United States of America, present, past or future, the Collector of Internal Revenue, Baltimore, Maryland, or any other Collector of the United States of America, any person or persons, firm or firms, corporation or corporations, association or associations whatsoever, and to make like contracts with any attorney or attorneys for the defense of any action or proceeding which may be brought against me in any court or courts:"

On April 13, 1926, Sielcken, as attorney in fact for Mrs. Isenberg, executed for her an acknowledgment of full compliance by the Alien Property Custodian with the decree of the Supreme Court of the District of Columbia by delivery to her of money and property of the appraised value of $1,- 458,102.50. This instrument also contained words which granted in consideration of the foregoing a general release to the Alien Property Custodian and all other public officials concerned, "from any and all rights, claims and demands of every kind, character and description, whether joint or several, which I may have to any interest, right or title in any money or other property which may have been conveyed, transferred, assigned, delivered or paid to the Alien Property Custodian, or seized by him, based upon or arising out of any and all money or other property owing or belonging to, or held for, by, on account of, or on behalf of, or for the benefit of Mrs. Paul Isenberg. * * *"

On April 7, 1926, income taxes due from Mrs. Isenberg were reviewed by the Bureau of Internal Revenue with the result that the Bureau found due for all years from 1918 to 1925, inclusive (which embraced those for the years 1919 and 1920) $228,- 725.21. This amount was recited in the preamble to the instrument of April 7, 1926, which settled controversies between the parties by giving Mrs. Isenberg property covered by the decree of the Supreme Court of the District of Columbia and by allowing the United States to retain to the above amount the taxes which the Alien Property Custodian had paid on gains realized through his transactions in connection with the property he had seized.

The plaintiff contends that Section 18 of the Settlement of War Claims Act which went into effect on March 10, 1928, 50 U.S.C.A. Appendix § 24, nearly two years after the date of the settlement, entitles the estate to a remission of the taxes on assessed gains realized through compulsory conversions of the seized property by the Alien Property Custodian. He attacks the releases on two grounds: (1) That they did not, as a matter of construction, cover the items for which the present action is brought; (2) That even if they did formally cover the items (a) they did not conform to the statutory requirements governing such releases, (b) they were contrary to sound public policy, (c) Sielcken, the attorney in fact who executed them on behalf of Mrs. Isenberg, acted beyond the scope of his authority in so doing.

The court below allowed recovery on the first of the above grounds holding that the clause of the instrument of April 7, 1926, providing that the plaintiff "forever waives any right which she may now have

·or which may be given to her by future legislation of any kind or character whatsoever" was a waiver only, and that a waiver is the "intentional abandonment or relinquishment of a known right", Champion Spark Plug Co. v. Automobile Sundries Co., 2 Cir., 273 F. 74, 79, which would not extinguish rights that were unknown at the time and only came into being under a statute later enacted. The clause was more, however, than a waiver. It in effect was a promise not to enforce any rights that might arise to have income taxes refunded, and in consideration therefor the Alien Property Custodian was to abandon his appeal and turn over the seized property to Mrs. Isenberg. Such an instrument operated as a valid release of rights to a refund of taxes even if the rights had not arisen at the time the settlement was made. It made no difference that in a technical sense the instruments were not releases because lacking seals, for they were contracts executed for a valuable consideration whereby any action by Mrs. Isenberg to recover back the income taxes paid by the Alien Property Custodian for her account was barred. American Law Institute Restatement-Contracts, § 402, Comment b; Klamath Indians v. United States, 296 U. S. 244, 56 S.Ct. 212, 80 L.Ed. 202; Crum v. O'Rear, 132 Ill. 443, 24 N.E. 956; Curtis v. Curtis, 40 Me. 24, 63 Am.Dec. 651; Power's Appeal, 63 Pa. 443; Farnham v. Farnham, 204 App.Div. 573, 198 N.Y.S. 771. Nor is it important that there had not been a closing agreement signed by the Commissioner and approved by the Secretary of the Treasury as provided by statute. Botany Worsted Mills v. United States, 278 U.S. 282, 288, 49 S.Ct. 129, 131, 73 L.Ed. 379. Here the promisee was given the right to have the appeal from the decree in her favor withdrawn and she in turn promised to abandon any rights she might have to secure a refund of income taxes amounting to $228,725.21. It can make no difference that some of her claims were for the refunding of taxes paid in other years than 1919 and 1920, that only the taxes for those years were directly involved in this suit, and that she still had the right to dispute the assessments for the other years. She was willing to forego those rights and to accept what may have been a harsh bargain in order to get back her property without further delay or litigation.

The plaintiff says, however, that the Attorney General, who signed the stipulation for the dismissal of the appeal, had no power to withdraw the appeal on terms involving a cash settlement such as was made and that such a settlement had to be made by the Commissioner with the approval of the Secretary of the Treasury. But the control over litigations to which the United States is a party authorized the Attorney General to abandon the appeal. U.S.Rev.Stat. § 359, 5 U.S.C.A. § 309; New York v. New Jersey, 256 U.S. 296, 307, 308, 41 S.Ct. 492, 65 L.Ed. 937; Confiscation Cases, 7 Wall. 454, 458, 19 L.Ed. 196. We think that he could also prescribe the terms upon which the appeal was to be dismissed. 1901, 23 Op. of Attys. Gen. 507. In any event the taxpayer, where she received and retained the fruits of the settlement, was estopped to question its terms. Backus v. United States, Ct.Cl., 59 F.2d 242, 257, certiorari denied 288 U.S. 610, 53 S.Ct. 402, 77 L.Ed. 984.

The plaintiff's further contention that Mrs. Isenberg's attorney in fact was given no authority to execute the compromises and releases on her behalf flies directly in the face of the specific grant of power to "settle upon such terms as he may deem proper". We think the contention without merit.

It is argued finally that it is contrary to sound public policy to sanction a release by a citizen of future benefits extended by Congress for her relief. We see no sufficient ground for this contention since we can discover no public policy against retaining taxes at rates imposed before the remedial statutes were enacted in cases where the taxpayer has agreed, in return for a valuable consideration, not to take advantage of future tax exemptions. Such an agreement is quite different from one where an employee bargains away his right to sue his employer for violation of a statute passed for his protection, such as a safety appliance act, or a workmen's compensation measure. The taxpayer here was dealing with the government at arm's length and was not of a class needing any special protection. Congress could have granted rights to obtain refunds of taxes paid by the Alien Property Custodian out of seized property irrespective of any arrangement of settlement. Klamath Indians v. United States, 296 U.S. 244, 250, 251, 56 S.Ct. 212, 215, 80 L.Ed. 202. But the Settlement of War Claims Act of March 10, 1928, did not so provide and we should not extend its terms on vague grounds of public policy.·

The judgment for the plaintiff upon the first and second causes of action is reversed and the case is remanded with directions to dismiss.