Wally **KELBERINE** et al., Appellants,

v.

**SOCIETE INTERNATIONALE, ETC.,** Interhandel, Etc., et al., Appellees.

No. 19286.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 1, 1965.

Decided April 7, 1966.

Petitions for Rehearing En Banc and for Rehearing before the Division Denied June 16, 1966.

Mr. Harold E. Stassen, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of court, with whom Mr. John Alvin Croghan, Washington, D. C., was on the brief, for appellants.

Mr. John J. Wilson, Washington, D. C., with whom Mr. Frank H. Strickler, Washington, D. C., was on the brief, for appellee Societe Internationale, Etc.

Mr. Richard S. Salzman, Atty., Dept. of Justice, with whom Mr. David C. Acheson, U. S. Atty. at the time the brief was filed, and Mr. Morton Hollander, Atty.,

Dept. of Justice, were on the brief, for appellees Katzenbach and Fowler. Mr. Fred W. Drogula, Atty., Dept. of Justice, also entered an appearance of appellees Katzenbach and Fowler.

Before PRETTYMAN and WILBUR K. MILLER, Senior Circuit Judges, and DANAHER, Circuit Judge.

PRETTYMAN, Senior Circuit Judge.

This law suit has an antecedent history. In years prior to World War II the appellee Societe Internationale, Etc.,[1] a Swiss holding corporation, came into ownership of various American properties, including over 90 per cent of the stock of General Aniline and Film Corporation, a Delaware corporation. In 1942 this stock was vested in the Alien Property Custodian, succeeded by the Attorney General of the United States, under the Trading With the Enemy Act.[2] When the war was over, Interhandel in 1948 sued under Section 9(a) of the Act to recover the property. The litigation was extensive.[3] Finally in 1963 the case was settled by an agreement written and filed in the suit.[4] Pursuant to that stipulation the General Aniline stock was sold at public auction, some three hundred twenty-nine million dollars being realized from the sale. The bids were opened March 9, 1965, and the shares delivered March 17, 1965. Interhandel's share of the proceeds was one hundred twenty million dollars. This share was deposited in a special account in the Treasury and is being held there, delivery to Interhandel having been delayed by the terms of the settlement and by this law suit.

Our appellants, Wally Kelberine and Lenka Berlin, two individuals, filed this civil action on March 16, 1965, the day

1. Known to this litigation variously as I. G. Chemie and as Interhandel.

2. 40 STAT. 411 (1917), as amended, 50 U.S. C. App. § 1 et seq.

3. See Societe Internationale Pour Participations Industrielles, etc. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), reversing Societe Internationale,

etc. v. Brownell, 100 U.S.App.D.C. 148, 243 F.2d 254 (1957); Societe Internationale, etc. v. McGranery, 111 F.Supp. 435 (D.D.C.1953), aff'd sub nom. Societe Internationale, etc. v. Brownell, 96 U.S. App.D.C. 232, 225 F.2d 532 (1955), cert. denied, 350 U.S. 937, 76 S.Ct. 302, 100 L.Ed. 818 (1956).

4. Civil No. 4360 (D.D.C.1948).

before the delivery of the Aniline stock pursuant to the sale at auction. In their complaint they say they suffered under the Nazi conspiracy in Europe and that they are now, although they were not at the time of their loss and damage, citizens of the United States. They say they bring the action on behalf of all persons similarly situated, too numerous to bring before the court. They say the Attorney General and the Secretary of the Treasury intended to deliver to Interhandel the $120,000,000 proceeds from the sale. They further say that between 1933 and 1945 a number of men and corporations in Europe acted in a gigantic conspiracy (referred to as the "Nazi Conspiracy") in the course of which they illegally seized the property of plaintiffs and of the class they represent, and that they (meaning the conspirators) enforced slave labor upon plaintiffs and killed members of the families of plaintiffs. They further allege that I. G. Farbenindustrie, a corporation, was an intergral part of the Nazi conspiracy, participated in it, and profited from it, and has been declared officially by the United States Government to have been an integral part of that conspiracy. They say that Interhandel was a creature of Farbenindustrie and that it is and should be fully accountable and liable to the extent of the assets within the United States and to the extent of the losses and damages of the plaintiffs at the hands of the Nazi conspiracy. Plaintiffs say that the seizures, etc., were illegal under the valid laws of the states concerned and that the claims of plaintiffs rest further upon inherent natural law. They say the class they represent exceeds two hundred thousand persons.

Plaintiffs pray that the Attorney General and the Secretary be enjoined from paying to Interhandel any part of the $120,000,000, that plaintiffs as a class be adjudicated as having "the right to said $123,000,000 in funds", and "That upon the individual proof of claim by the Plaintiffs to a master or masters appointed by this Court, the Plaintiffs individually pro rata and equitably be paid said funds upon their adjudicated claims."

The Government defendants moved to dismiss on the grounds that, as to them, the court lacked jurisdiction and that the complaint failed to state a claim upon which relief could be granted. Defendant Interhandel moved to dismiss "and/or" to quash the summons on the grounds that it was not subject to process in the District and that it had not been properly served. Plaintiffs proceeded to take depositions in pursuit of discovery. The motions were set for hearing April 9, 1965. Plaintiffs moved to continue them generally. The court granted the Government defendants' motion to dismiss and continued Interhandel's motion, setting it for hearing on April 29th. Plaintiffs took further depositions and moved to continue the hearing on the motion to a still later date to permit them to explore further certain phases of discovery. The court denied the motion to continue and granted Interhandel's motion to dismiss and to quash service of process. This appeal followed.

I

■ Did the District Court err in refusing to continue consideration of the motions to dismiss pending the further taking of depositions by plaintiffs? The subject of the depositions, so far as is indicated, was the doing of business by Interhandel in the District of Columbia. Plaintiffs had one continuance of twenty days and had taken several depositions directed to this subject. Interhandel claimed the subject had been covered exhaustively. The court sought a proffer from counsel for plaintiffs, pointing out that plaintiffs said the only business of Interhandel was fronting for Farben and owning the stock of General Aniline. Upon that basis the court thought the evidence already taken was enough. Plaintiffs said that by taking the further depositions they would have "a more comprehensive and complete view". We think the court was correct, and in any event the matter was primarily in its discretion.

II

■ Did the court err when it quashed the service? We think it did. The Dis-

trict of Columbia statute [5] provides that the District Court here shall have cognizance "of all cases in law and equity between parties, both or either of which shall be resident or be found within said district". Interhandel came into the District to file a civil action concerning its property. It continued to prosecute that action. It appointed and maintained here an attorney in fact, who was authorized to accept service of all notices and process on its behalf for such proceedings between it and the Attorney General and "Treasurer of the United States" as may be necessary to the enforcement of the stipulation of settlement of the pending civil action and of any judgment entered in that action; and for no other purpose whatever. We think the institution and prosecution of a civil action in the court here clearly establishes the presence of the corporation here. It voluntarily subjected itself to the jurisdiction of the court; it could not do so *in absentia*. So we think Interhandel was clearly found here.[6]

■ Interhandel says appellants' contentions on this point fail because it has never transacted business here. It says Congress defined "doing business" when it exempted from license requirements corporations which merely prosecute litigation.[7] The statute does not read as Interhandel reads it. It exempts these corporations from the necessity of getting a license, but it notably does not say they are not doing business. Furthermore the liability of a foreign corporation to suit here does not depend upon its doing business here; it depends upon its being found here.

■ The corporation being found here and therefore subject to suit here,

the next question concerns service of process: Upon whom could service be had? We think service upon the agent resident in the District was valid. His expressed authority was limited, to be sure. But it covered the law suit respecting the Interhandel property; he was empowered to accept service "for such proceedings between the parties to this Stipulation as may be necessary to the interpretation or enforcement, or both, of this Stipulation". The case at bar certainly involved the enforcement of the stipulation; indeed it sought to prevent that enforcement. It is true that proceeding was not between the parties to the stipulation, but all of those parties were parties to this suit. It could quite properly be held that process in this case fell within the agent's express authority. But we do not rest upon that power of attorney. We think that under the total circumstances of the case the agent of the corporation present in the District for the purpose of conducting the litigation in the courts here was subject to process in this suit. The statute says [8] that service may be made on a non-resident corporation by service thereof on "the registered agent", but it also provides [9] that nothing therein shall limit the right to serve process "in any other manner now or hereafter permitted by law." We are of opinion that, a foreign corporation being present in the District, its agent duly authorized to do the tasks for which it is present here may be served with process in its behalf in an action reasonably within the ambit of those tasks.[10]

■ We intend this ruling to be no broader than the case. We hold that, if a foreign corporation comes into the District of Columbia for the purpose of filing

5. D.C.Code § 11–306 (1961 ed.).

6. The "found" feature of this statute was discussed briefly by the Supreme Court in Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 236, 70 S.Ct. 14, 94 L.Ed. 22 (1949).

7. D.C.Code § 29–933(b) (1961 ed.).

8. D.C.Code § 29–933i(a) (1961 ed.)

9. *Id.*, § 29–933i(c).

10. See the discussions by the Supreme Court in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

and prosecuting in the District Court a suit concerning certain property, it cannot, by restricting the authority of its resident agent, immunize itself against suit in that same court involving that same property.

■ It is suggested that since, as appears in a moment, we affirm the dismissal of the complaint, the dispute concerning the service of process is moot and ought not to be decided. But, on the other hand, if Interhandel was not susceptible to process in the District, the nature of the complaint, valid *vel non*, was immaterial. Thus we think decision upon the service-of-process point is an integral first step in the resolution of the controversy. Had we decided Interhandel was not subject to suit, there would have been an end to the matter. But, since we hold Interhandel to have been subject to suit and correctly served, we pass on to the problem of the dismissal of the complaint.

### III

Did the court err in dismissing the action against the Government officers? We think it did not.

■ Pending in the court here was a civil action by Interhandel against the Attorney General concerning properties vested in him by virtue of a federal statute. The President, by a memorandum dated January 8, 1963, and under authority vested in him by statute,[11] determined that the interest of the United States required the sale of this property. The Attorney General had power to settle the litigation.[12] He settled it. One of the terms of the stipulation of settlement was that the funds would be held by the United States as security for the performance by Interhandel of certain indemnity obligations imposed upon it by the agreement. (Sec. VIII(4).) Those obligations (Sec. IX(2)) were that Interhandel would hold harmless the United States and its officers and employees from any claim made relating to actions described in certain paragraphs of the stipulation, or resulting from compliance by any officer of the United States with the stipulation, and from any claim made relating to the control or operation of the General Aniline and Film Corporation by Interhandel, or any of its stockholders, or persons under its control, or successors to such persons. Further, Interhandel agreed (Sec. IX(2)) to indemnify the United States and its officers and employees from any claims brought by the Government of the Netherlands on behalf of itself or its political subdivisions, Interhandel or persons under its control, or any Dutch national person, in respect to the properties subject to the stipulation. The stipulation provided that the United States could recover sums due by reason of the indemnities either by payment or by cancellation of the securities in which the properties were invested. And it provided (Sec. VIII(4)) that redemptions of these properties for Interhandel could be made from time to time as the Attorney General determines that such securities are no longer needed to secure the performance by Interhandel of its indemnity obligations. Thus it is amply clear that the United States has an interest in these securities and that its officers are performing official duties involving judgment and discretion, not mere ministerial chores. The action was to require these officers to turn over to plaintiffs these securities and also to prevent them from carrying out the obligations of the stipulation of settlement. Thus the action is against the United States, which has not consented to it. It was correctly dismissed.

11. Pub.L.No.87–846, § 203, 76 STAT. 1113 (1962).

12. Halbach v. Markham (Appeal of Bumsted), 207 F.2d 503 (3d Cir. 1953), cert. denied sub nom. Bumsted v. Markham, 347 U.S. 933, 74 S.Ct. 628, 98 L.Ed. 1084 (1954); Standard Oil Co. v. Clark, 163 F.2d 917 (2d Cir. 1947), cert. denied, 333 U.S. 873, 68 S.Ct. 901, 92 L.Ed. 1149 (1948); Castell v. United States, 98 F.2d 88 (2d Cir.), cert. denied, 305 U.S. 652, 59 S.Ct. 244, 83 L.Ed. 422 (1938).

Plaintiffs cite and rely upon Mellon v. Orinoco Iron Co.[13] and Houston v. Ormes.[14] None of the criteria listed in those cases as premises for exceptions to the general rule respecting unconsented-to suits against the United States are present in the case at bar.[15]

■ Moreover (although the point is immaterial in view of the foregoing) plaintiffs specifically and expressly asserted to the trial court that they claim no equitable lien upon the funds being held in the Interhandel account. Thus they are in the position of persons merely interested in the common good and, under the doctrine of Commonwealth of Massachusetts v. Mellon,[16] have no standing to sue.

## IV

Did the court err when it dismissed the complaint? We think it did not.

■ The thesis of the action is easily recognized from the outline we have given of the complaint. Interhandel is a creature of Farben. Farben was a part of the Nazi conspiracy of 1933–45. The Nazi conspiracy, in violation of the laws of the several states involved and of natural law, damaged these two plaintiffs and others, to a number of some two hundred thousand, destroying their property, killing their relatives, and reducing them to slave labor. Therefore all the property of Interhandel should be awarded by American courts to these plaintiffs, pro rata. We are of opinion the thesis is not presently susceptible of judicial implementation. It may be that the Congress might enact a program and a procedure by which the objectives prayed for could be achieved. But we think the courts alone cannot do it. As presently framed, the problem is not within the established scope of judicial authority. It did not arise under the Constitution or laws of the United States, or within the territorial jurisdiction of the courts of the United States. The premises for these conclusions are many and easily seen. The span between the doing of the damage and the application of the claimed assuagement is too vague. The time is too long. The identity of the alleged tort feasors is too indefinite. The procedure sought—adjudication of some two hundred thousand claims for multifarious damages inflicted twenty to thirty years ago in a European area by a government then in power—is too complicated, too costly, to justify undertaking by a court without legislative provision of the means wherewith to proceed.

The complaint prays, as we have noted, that all the Interhandel funds be divided "pro rata and equitably" among the participating petitioners. If only the present two participate, they would receive sixty million dollars apiece. If the entire potential two hundred thousand damaged persons entered the proceedings, each would receive six hundred dollars. This method of award would be a novelty to us. The events, the witnesses, the guilty tort-feasors, their membership in the conspiracy are all so potentially vague at this point as to pose an insoluble problem if undertaken by the courts without legislative or executive guidance, authorization or support. The whole concept is too uncertain of legal validity to sustain the self-establishment of the proceedings by a court in the absence of specific legislative or executive formulation. It seems to us that the trial court correctly dismissed the action for failure to state a claim upon which relief can be granted.

Affirmed.

13. 266 U.S. 121, 45 S.Ct. 53, 69 L.Ed. 199 (1924).

14. 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667 (1920).

15. And see Smith v. Harrah, 60 App.D.C. 258, 51 F.2d 314 (1931), and McCormack v. Harrah (a companion case), 60 App. D.C. 260, 51 F.2d 316 (1931).

16. 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).