## GRAHAM ET AL. *v.* BROTHERHOOD OF LOCOMO-TIVE FIREMEN & ENGINEMEN.

No. 16.   Argued October 10, 1949.—Decided November 7, 1949.

*Joseph L. Rauh, Jr.* argued the cause for petitioners. With him on the brief were *Irving J. Levy* and *Henry Epstein.* *Charles Cook Howell* was of counsel for the Atlantic Coast Line Railroad Co., petitioner.

*Milton Kramer* argued the cause for respondent. With him on the brief were *Lester P. Schoene, Harold ·C. Heiss* and *Russell B. Day.*

*Solicitor General Perlman* and *Robert L. Stern* filed a brief for the United States, as *amicus curiae,* supporting petitioners.

*James B. McDonough, Jr.* and *Frank J. Wideman* filed a brief for the Seaboard Air Line Railroad Co., as *amicus curiae.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

Twenty-one Negro firemen, sometime employed by southern railroads, brought this suit against the principal defendant, the Brotherhood of Locomotive Firemen and

Enginemen, three railroads, two local lodges of the Brotherhood, and certain officers of those lodges. The complaint alleges in substance that the Brotherhood is an exclusively white man's union and, as it includes a majority of the craft, it is possessed of sole collective bargaining power in behalf of the entire craft including the Negro firemen in consequence of the Railway Labor Act. It has negotiated agreements and arrangements with the southern railroads which discriminate against colored firemen, who are denominated "not-promotable" while white ones are "promotable." The effect of the agreements is to deprive them, solely because of their race, of rights and job assignments to which their seniority would entitle them. Many Negro firemen have been thus displaced or demoted and replaced by white firemen having less seniority. The complaint asked for a declaration of petitioners' rights, for an injunction restraining compliance with the above agreements, and for damages. In short, the cause of action pleaded is substantially the same as that which this Court sustained in *Steele* v. *Louisville & Nashville R. Co.*, 323 U. S. 192, and *Tunstall* v. *Brotherhood of Locomotive Firemen and Enginemen*, 323 U. S. 210.

It is needless to recite additional details of the present case. What it adds to the governing facts of the earlier cases is a continuing and willful disregard of rights which this Court in unmistakable terms has said must be accorded to Negro firemen.

Upon the complaint, supplemented by evidence that the deliberate elimination of Negro firemen was proceeding at a rapid pace and that they would soon be entirely displaced, motion was made for a preliminary injunction to prevent further discrimination and loss of job assignments pending the outcome of the litigation.

The Brotherhood did not meet the allegations of the bill of complaint or the affidavits. It rested on a motion

to dismiss, assigning as grounds that it had not been properly served with process and that venue was unlawfully laid in the District of Columbia. The trial court, after hearing evidence of the parties on these matters, denied the motion to dismiss and granted a preliminary injunction.

The Brotherhood alone petitioned the Court of Appeals under District of Columbia Code, § 17–101, for a special appeal and stay of the injunction. These were granted and that court reversed. Holding that venue was improperly laid in the District of Columbia, it ordered the case transferred to the Northern District of Ohio. 84 U. S. App. D. C. 67, 175 F. 2d 802. We granted certiorari. 337 U. S. 954.

At the outset we are met by the contention in support of the judgment below that service of process upon the Brotherhood was not legally perfected, in which case, of course, it would not properly be before the Court at all. The District Court, after hearing evidence upon the subject, held that service upon the Brotherhood was sufficient. The Court of Appeals noted that this question was raised but did not reverse upon this ground. Instead, it considered at length whether the action constitutionally could be entertained by the courts of the District of Columbia, a subject which would hardly be ripe for decision if the action had not been properly commenced anywhere. Moreover, its decision transferred the cause to the Northern District of Ohio, a power which it could exert only if it considered the service adequate to confer jurisdiction of the parties. We accept the ruling of the District Court on the adequacy of service, based as it is essentially on matters of fact, and undisturbed and impliedly approved by the Court of Appeals. We hold that personal jurisdiction of the respondent is established.

This cause of action is founded on federal law, and the venue provision generally applicable to federal courts at

the time this action was commenced required such actions to be brought in the district whereof defendant "is an inhabitant." 28 U. S. C. § 112. Effective September 1, 1948, this provision was modified to require that such actions be brought "only in the judicial district where all defendants reside, except as otherwise provided by law." 28 U. S. C. (Supp. II) § 1391 (b). It was assumed in the courts below, and since it involves a question of fact we do not stop to inquire as to whether they were correct in so doing, that if this general federal venue statute is the sole authority for bringing this case in the District of Columbia, the venue could not be supported, as this defendant claims neither to reside in nor to inhabit the District.

But there is, additionally, a venue statute enacted by Congress, applicable to the courts of the District of Columbia, which permits an action to be maintained if the defendant shall be "an inhabitant of, *or found within,* the District." D. C. Code § 11–308. (Italics supplied.) See also § 11–306. The District Court concluded upon all the evidence that the Brotherhood was found within the District, and it based venue upon that finding. The Court of Appeals did not deny that the defendant was so "found" within the meaning of this Act, but held the Act itself unavailing to this plaintiff because it believed that the constitutional power of Congress under Art. I, § 8, Cl. 17, to provide for the government of the District of Columbia, does not enable Congress to vest jurisdiction of such cases as this in District of Columbia courts. It based this reasoning on *O'Donoghue* v. *United States,* 289 U. S. 516.

Little would be accomplished by reviewing the conflicting theories as to the origin and extent of congressional power over District of Columbia courts. It is enough to say that we do not read any prior decision of this Court to deny Congress power to invest these courts

with jurisdiction to hear and decide such a cause as we have here. We hold that a party asserting a right under the Constitution or federal laws may invoke either the general venue statutes or the special District of Columbia statutes and that the courts of this District may exercise their authority in cases committed to them by either.

The respondent has strenuously urged throughout that in view of the provisions of the Norris-LaGuardia Act, 29 U. S. C. §§ 101 *et seq.*, the District Court was without jurisdiction to grant relief by injunction.

The Court of Appeals did not pass upon this contention, and were it a question of first impression we should not be disposed to consider it here at the present stage of the proceedings. But this is not a question of first impression. In *Virginian R. Co.* v. *System Federation,* 300 U. S. 515, we held that the Norris-LaGuardia Act did not deprive federal courts of jurisdiction to compel compliance with positive mandates of the Railway Labor Act, 45 U. S. C. §§ 151 *et seq.*, enacted for the benefit and protection, within a particular field, of the same groups whose rights are preserved by the Norris-LaGuardia Act. To depart from those views would be to strike from labor's hands the sole judicial weapon it may employ to enforce such minority rights as these petitioners assert and which we have held are now secured to them by federal statute. To hold that this Act deprives labor of means of enforcing bargaining rights specifically accorded by the Railway Labor Act would indeed be to "turn the blade inward." We adhere to the views expressed in the *Virginian* case.

But the Brotherhood urges that the controversy in the *Virginian* case did not involve a labor dispute within the meaning of the Norris-LaGuardia Act and that accordingly that case must be distinguished on its facts. The Act defines a "labor dispute" to include "any controversy concerning terms or conditions of employment, or con-

cerning the *association or representation of persons* in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment . . . ." 29 U. S. C. § 113 (c). (Emphasis supplied.) We do not accept the Brotherhood's invitation to narrow the meaning of that term. The purpose of the Act would be vitiated and the scope of its protection limited were it to be construed as not extending to efforts of a duly certified bargaining agent to obtain recognition by an employer. Moreover, if this Court had considered that a labor dispute was not involved, it would hardly have taken the trouble, in the *Virginian* case, to refute contentions based upon parts of the Act, which as a whole extends its protection solely to such disputes.

The *Steele* and *Tunstall* cases, *supra,* arose under circumstances almost indistinguishable from those of the instant case, and the complaints asked the same kind of relief. We held there that, as the exclusive statutory representative of the entire craft under the Railway Labor Act, the Brotherhood could not bargain for the denial of equal employment and promotion opportunities to a part of the craft upon grounds of race. We pointed out that the statute which grants the majority exclusive representation for collective bargaining purposes strips minorities within the craft of all power of self-protection, for neither as groups nor as individuals can they enter into bargaining with the employers on their own behalf. *Order of Railroad Telegraphers* v. *Railway Express Agency,* 321 U. S. 342; *J. I. Case Co.* v. *Labor Board,* 321 U. S. 332; *Medo Photo Supply Corp.* v. *Labor Board,* 321 U. S. 678. And we held that abuse of its powers by perpetrating discriminatory employment practices based on racial considerations gives rise to a cause of action under federal law which federal courts will entertain and will remedy by injunction. But although the Norris-LaGuardia Act relates to the jurisdiction of the federal courts to grant

injunctions in labor disputes, the issue was not pressed, and we did not discuss it at length.

However, the opinion left no doubt as to the Court's position: "In the absence of any available administrative remedy, the right here asserted, to a remedy for breach of the statutory duty of the bargaining representative to represent and act for the members of a craft, is of judicial cognizance. That right would be sacrificed or obliterated if it were without the remedy which courts can give for breach of such a duty or obligation and which it is their duty to give in cases in which they have jurisdiction. . . . For the present command there is no mode of enforcement other than resort to the courts, whose jurisdiction and duty to afford a remedy for a breach of statutory duty are left unaffected. The right is analogous to the statutory right of employees to require the employer to bargain with the statutory representative of a craft, a right which this Court has enforced and protected by its injunction in *Texas & New Orleans R. Co.* v. *Brotherhood of Clerks* [281 U. S. 548], 556–557, 560, and in *Virginian R. Co.* v. *System Federation, supra,* 548, and like it is one for which there is no available administrative remedy." *Steele* v. *Louisville & Nashville R. Co., supra,* 207. And see *Tunstall* v. *Brotherhood of Locomotive Firemen and Enginemen, supra,* 213.

It would serve no purpose to review at length the reasons which, in the *Steele* and *Tunstall* cases, *supra,* impelled us to conclude that the Railway Labor Act imposes upon the Brotherhood the duty to represent all members of the craft without discrimination and invests a racial minority of the craft with the right to enforce that duty. It suffices to say that we reiterate that such is the law.

Nor does the Norris-LaGuardia Act contain anything to suggest that it would deprive these Negro firemen of recourse to equitable relief from illegal discriminatory representation by which there would be taken from them

their seniority and ultimately their jobs. Conversely there is nothing to suggest that, in enacting the subsequent Railway Labor Act provisions insuring petitioners' right to nondiscriminatory representation by their bargaining agent, Congress intended to hold out to them an illusory right for which it was denying them a remedy. If, in spite of the *Virginian, Steele,* and *Tunstall* cases, *supra,* there remains any illusion that under the Norris-LaGuardia Act the federal courts are powerless to enforce these rights, we dispel it now. The District Court has jurisdiction to enforce by injunction petitioners' rights to nondiscriminatory representation by their statutory representative.

Accordingly, the judgment of the Court of Appeals is reversed, the order of the District Court is reinstated, and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion. Let the mandate go down forthwith.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS and MR. JUSTICE MINTON took no part in the consideration or decision of this case.