Leopold BERMAN, Samuel Bierman, Charles E. Colcord, John Southwick, Theodore Kelm, Aleksander Pasiecznik, Angel Torres, Donald W. Jackson, Roy Rydell, Roy Eyjian, Anselmo De Castro Francis, Elmer Reese, Torolf Bergstrom and Rudolph Kaunitz, suing on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

NATIONAL MARITIME UNION, American Merchant Marine Institute, Inc., American Export Lines, Inc., Grace Line, Inc., Lykes Brothers Steamship Company, Inc., Moore McCormack Lines, Inc., United Fruit Company and United States Lines Company, Defendants.

United States District Court
S. D. New York.

Sept. 18, 1958.

---

Rabinowitz & Boudin, John J. Abt, New York City, for plaintiffs.

Lorenz, Finn & Giardino, New York City, for defendant United Fruit Co.

BICKS, District Judge.

The motion sub judice seeks dismissal of the complaint on the ground that this Court is without jurisdiction of the cause. Defendants argue that the Na-

tional Labor Relations Board (hereinafter referred to as NLRB) has exclusive original jurisdiction but if the contrary be true this Court is still without the power to entertain the suit.

The complaint alleges: (i) plaintiffs are unlicensed seamen who, for many years prior to 1950 shipped out of the Port of New York on merchant vessels; (ii) in or about 1951 the United States Coast Guard adopted regulations establishing loyalty and security qualifications as prerequisites to employment in the United States Merchant Marine; (iii) plaintiffs were denied security clearance and, as a result, were prohibited from obtaining further employment as unlicensed seamen; (iv) on October 26, 1955 the Court of Appeals for the Ninth Circuit struck down the Coast Guard procedures under the aforementioned regulations as unconstitutional and void, Parker v. Lester, 9 Cir., 1955, 227 F.2d 708; (v) thereafter and between January 1, 1957 and June 1, 1957, the Coast Guard restored valid merchant mariner's documents to the plaintiffs.

The complaint alleges further: the collective bargaining agreement in effect during the period January 1, 1957 to June 15, 1957 between the defendant National Maritime Union (hereinafter referred to as Union) and the corporate defendants provided in substance that the ship operators would hire all unlicensed personnel through the employment office of the Union and that the Union would refer unlicensed personnel to the ship operators for employment in accordance with a plan or order of priority as follows:

"(a) Group 1, consisting of (1) those employed as unlicensed seamen on any deep sea dry cargo passenger, tanker and/or collier vessel by employers having a contract with the Union during the period of June 1, 1953 and December 31, 1953, inclusive; (2) those registered for employment on December 31, 1953, at any one of the Union-operated employment offices; (3) those incapable of working between June 1, 1953 and December 31, 1953 on contract vessels because of engagement in official Union business; (4) those who were hospitalized * * * during the period * * * (5) those on an authorized extended leave of absence from the industry immediately prior to June 1, 1953, or subsequent to December 31, 1953; (6) those employed as unlicensed seamen by employers not under contract with the Union, but who may become parties to a collective bargaining agreement with the Union.

"(b) Group 2, consisting of those who have, prior to June 1, 1953, or since December 31, 1953, been employed as unlicensed seamen on contract vessels.

"(c) Group 3, * * * *

"(d) Group 4, * * * *"

The complaint further alleges that:

"At all times since the plaintiffs were denied security clearance by the Coast Guard, each of them has been ready, willing and able to engage in the occupation of unlicensed seaman and has been available for employment as such. Plaintiffs Southwick and Eyjian were on an authorized extended leave of absence from the industry immediately prior to June 1, 1953; plaintiffs Pasiecznik and Jackson were employed as unlicensed seamen by employers having a contract with the Union during the period between June 1, 1953 and December 31, 1953. But for the aforesaid unlawful action of the Coast Guard, each of the other plaintiffs would have been employed in the period from June 1, 1953 to December 31, 1953 as an unlicensed seaman on vessels covered by collective bargaining agreements with the Union or, on December 31, 1953, would have been registered for employment with the Union. Hence, had it not been for the aforesaid unlawful action of the Coast Guard, each of the plaintiffs would now be entitled to Group 1 priority under

the collective bargaining agreements described in paragraph 10.

\* \* \* \* \* \*

"Prior to June 15, 1957, the Union did in fact register for employment the plaintiffs who applied for registration as aforesaid and assigned plaintiffs Southwick, Pasiecznik, Jackson and Eyjian to Group 1 priority, referring them for employment in accordance with such priority. Said four plaintiffs were employed by the ship operators to whom they were referred. However, in violation of its duty as aforesaid, the Union, prior to June 16, 1957, arbitrarily assigned the other plaintiffs who applied for registration as aforesaid to Group 2 priority and in consequence of such assignment the Union did not refer said plaintiffs for employment and said plaintiffs did not secure employment as unlicensed seamen, except that plaintiffs Francis and Reese were referred for and did secure such employment."

To this point the complaint sets out what is referred to, infra, as the first claim.

The further claim upon which plaintiffs predicate a right to relief is articulated thusly: on June 16, 1957 the Union and the corporate defendants executed amendments to the collective bargaining agreement adverted to above, which

"in substance provided that the Union shall not be required to register for employment any unlicensed seaman whom it does not consider to be suitable for employment and further provided that any unlicensed seaman may appeal from the action of the Union refusing to register him for employment or excluding him from Group 1 priority to a Permanent Appeals Board, \* \* \* Such amendments were negotiated and executed by the Union, \* \* \* and the corporate defendants, for the purpose and with the intent of authorizing the Union to refuse, and with the understanding that the Union would

thereafter refuse, to register or refer for employment the plaintiffs \* \* \* and that the Permanent Appeals Board would affirm such action by the Union.

"Subsequent to June 16, 1957, the Union, in violation of its duty as exclusive bargaining representative as aforesaid, has discriminated against the plaintiffs and other persons similarly situated by arbitrarily refusing to register them for employment, \* \* \*, all in the exercise of the authority purportedly given to it by the aforesaid amendments to the collective bargaining agreements. \* \* \* "

and that as a result of said conduct by the Union and the corporate defendants they have been prevented from securing employment as unlicensed seamen in the Port of New York. A declaratory judgment, injunctive relief and damages are sought. Jurisdiction is invoked pursuant to 28 U.S.C. § 1337.

It is apparent that the complaint, though drawn in one count, sets forth two claims upon each or both of which plaintiffs assert they are entitled to relief. The first claim relates to the alleged wrongful conduct of the Union and the corporate defendants prior to June 16, 1957, in failing to place some of the plaintiffs in the seniority position to which they assert they are entitled; the second, to activities and events subsequent to that date. June 16, 1957, it will be recalled, is the date upon which it is alleged the Union and the corporate defendants modified the previously existing collective bargaining agreement for the purpose of unlawfully discriminating against the plaintiffs. For the purposes of this motion the complaint will be treated as if the two claims had been separately stated and numbered.

■ Defendants' first argument is that the allegations of discriminatory acts are charges of unfair labor practices under the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq. and, as such, fall within the exclusive jurisdiction of the NLRB. The

statute, § 8(a) (3), provides that it shall be an unfair labor practice for an employer to discriminate in regard to hire or tenure of employment, to "encourage or discourage membership in any labor organization", and by § 8(b) (2) that it shall be an unfair labor practice for a labor organization or its agents "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection 8(a) (3)." The Act does not "outlaw discrimination in employment as such; only such discrimination as encourages or discourages membership in a labor organization is proscribed." Radio Officers Union, etc. v. National Labor Relations Board, 1954, 347 U.S. 17, 74 S.Ct. 323, 337, 98 L.Ed. 455. Nor does Mountain Pacific Chapter Of The Associated General Contractors, Inc., et al., 119 NLRB 126–A (1958), heavily relied on by defendants, establish a contrary rule. The determination by the NLRB was that the hiring hall arrangement there under consideration was of such a character that "the inference of encouragement of union membership is inescapable." The entire thrust of the Board's opinion is in keeping with the well settled meaning of § 8(a) (3) and it is devoid of any intimation that jurisdiction was grounded other than on said section.

The complaint in the case at bar makes no reference to any acts of discrimination from which an attempt to encourage or discourage union membership can be inferred; there is no clue as to the union affiliation, or lack thereof, of any of the plaintiffs. The discrimination, if any, which is alleged, is completely distinct from that described in §§ 8(a) (3) and 8(b) (2) of the Labor Management Relations Act, and is not cognizable by the Board. See, Syres v. Oil Workers Intern. Union, 1955, 350 U. S. 892, 76 S.Ct. 152, 100 L.Ed. 785, reversing 5 Cir., 1955, 223 F.2d 739.

Defendants' alternative position is that "assuming arguendo that the National Labor Relations Board does not have exclusive primary jurisdiction, nevertheless the District Court is without jurisdiction." They argue correctly that §§ 301 and 303 [1] of the Labor Management Relations Act have no application to this case. They err, however, in suggesting that our jurisdiction is not sustainable under the rule of Steele v. Louisville and Nashville Railroad Company, 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. See, also, Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L. Ed. 187; Graham v. Brotherhood, 1949, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Brotherhood of Railroad Trainmen v. Howard, 1951, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Syres v. Oil Workers International Union, supra; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. These cases establish the statutory duty of the Union to represent "fairly, impartially, and in good faith", Steele v. Louisville and Nashville Railroad Company, supra [323 U.S. 192, 65 S.Ct. 233], all members of the bargaining unit and that power exists in the federal district courts to redress "irrelevant and invidious" discriminations which amount to a breach of that duty.

The issue which remains to be resolved is whether the allegations of the complaint set forth a claim grounded upon irrelevant and hostile discriminations. The objective sought to be obtained by both the Union and the corporate defendants by the amended agreement of June 16, 1957, it is asserted, was to deny employment to plaintiffs. The inference to be drawn from the complaint is unmistakable that the alleged denial of employment to plaintiffs bore no reasonable relationship to their suitability for employment but was occasioned solely by their status as seamen to whom the Coast Guard had denied security clear-

---

1. These sections confer, respectively, jurisdiction upon the district court in suits for violation of contracts between an employer and a labor organization or between labor organizations, and suits involving boycotts and other unlawful combinations.

**332**

ance. Such an allegation of discrimination against a certified collective bargaining representative presents a federal question, cognizable in the first instance by a district court.

 The sufficiency of a complaint is not brought into issue on a motion under Rule 12(b) (1), Fed.Rules Civ.Proc. 28 U.S.C.A. On such a motion if the court finds that jurisdiction exists, the application must be denied. Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; 2 Moore's Fed.Pract. Par. 8.09[1] (1948).

The first claim, that is, the one relating to the seniority provisions of the agreement, stands on a different footing. Resolving every reasonable intendment in favor of the pleader, an analysis of the complaint discloses that it is barren of any allegations from which the existence of any hostile discrimination may reasonably be inferred. It is not suggested that the selection of the priority determining dates, i. e. June 1, 1953 to December 31, 1953, was motivated by a purpose to discriminate in any way against these plaintiffs. It is contended only that those of the plaintiffs who failed to qualify by the criteria set out in the agreement were denied placement in the highest seniority classification. Those among them who satisfied the requirements of priority Group 1 were placed therein. Indeed, the complaint itself recognizes that not all the plaintiffs were entitled to be classified in Group 1.[2] The unfairness, if any, resulting to plaintiffs was occasioned by the action of the U.S. Coast Guard. The Union is under no duty to establish exceptions to procedures otherwise valid in order to relieve the plaintiffs of the consequences of the Coast Guard action, a stranger to the representative relationship and the bargaining unit. The complaint alleges no facts relating to the first claim which may reasonably be construed as charging unfair treatment either by the Union or the corporate defendants. As to this

part of the complaint, defendant's motion must be granted.

Motion to dismiss for lack of jurisdiction granted as to the first claim; denied in all other respects.

So ordered.

plaintiffs *would now be entitled* to Group 1 priority * * *" (Emphasis supplied.)

---

2. Complaint, par. 11 reads: "Hence, *had it not been* for the aforesaid unlawful action of the Coast Guard, each of the