BALTIMORE CONTRACTORS, INC., a
Corporation, Plaintiff,

v.

CARPENTERS' DISTRICT COUNCIL OF
NEW ORLEANS AND VICINITY, Unit-
ed Brotherhood of Carpenters and Join-
ers of America, Local No. 2258, United
Brotherhood of Carpenters and Joiners
of America, Pile Drivers' Local Union
No. 2436, United Brotherhood of Car-
penters and Joiners of America, Inter-
national Association of Bridge Structur-
al and Ornamental Iron Workers, and
Iron Workers and Riggers Local No. 58,
Defendants.

Civ. A. No. 10414.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 27, 1960.

Steptoe & Johnson, N. Thompson Pow-
ers, Washington, D. C., Cobb & Wright,
Joseph V. Ferguson, II, New Orleans,
La., for plaintiff.

Cassibry, Jackson & Hess, Victor H.
Hess, Jr., New Orleans, La., for defend-
ants United Brotherhood of Carpenters
and Joiners of America, Carpenters Dis-
trict Council of New Orleans and Vicin-
ity, Local No. 2258, United Brotherhood
of Carpenters and Joiners of America,
and defendant Pile Drivers Local Union
No. 2436, United Brotherhood of Car-
penters and Joiners of America.

Dodd, Hirsch, Barker & Meunier,
Thomas J. Meunier, C. Paul Barker, New
Orleans, La., for defendants Internation-
al Association of Bridge, Structural &
Ornamental Iron Workers, AFL–CIO,
and Local Union No. 58 of the Interna-
tional Association of Bridge, Structural
& Ornamental Iron Workers, AFL–CIO.

J. SKELLY WRIGHT, District Judge.

The basic question [1] presented here is
whether the court has jurisdiction un-
der Section 301 of the Taft-Hartley Act [2]

1. In view of the conclusion reached, it is
unnecessary to resolve other differences
between the parties. For the purpose of
this opinion, it is assumed, without de-
ciding, that binding contracts between
plaintiff and the defendant Unions were
in existence; that these agreements con-
tained "no-strike" clauses; that the Car-
penters have threatened to strike; and
that such a strike would constitute a
breach of their contract with plaintiff.
It is likewise unnecessary to reach the
question whether, if the threat of striking
constitutes an "unfair labor practice"
within the meaning of Section 8(b) (4)
(D) of the Taft-Hartley Act, 29 U.S.C.A.
§ 158(b) (4) (D), the jurisdiction of the
N. L. R. B. in such matters prevents the

court from acting under Section 301 of
the Act. See Lodge No. 12, Dist. No. 37,
International Ass'n of Machinists v.
Cameron Iron Works, 5 Cir., 257 F.2d
467.

2. 29 U.S.C.A. § 185(a), which provides as
follows:
   "Suits for violation of contracts be-
tween an employer and a labor organ-
ization representing employees in an in-
dustry affecting commerce as defined in
this chapter, or between any such labor
organizations, may be brought in any
district court of the United States hav-
ing jurisdiction of the parties, without
respect to the amount in controversy or
without regard to the citizenship of the
parties."

to enforce the "no-strike" clause of a collective bargaining agreement despite the categorical ban on enjoining peaceful strikes announced by Section 4(a) of the Norris-LaGuardia Act.[3]

Before Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, it was generally conceded that no such power had been given to federal courts by the Taft-Hartley Act. See W. L. Mead, Inc. v. International Brotherhood, etc., 1 Cir., 217 F.2d 6; Alcoa S. S. Co. v. McMahon, D.C.S.D.N.Y., 81 F.Supp. 541, affirmed 2 Cir., 173 F.2d 567. See also Bakery Sales Drivers Local Union No. 33 v. Wagshal, 333 U.S. 437, 442, 68 S.Ct. 630, 92 L.Ed. 792. But since that decision impressive arguments have been marshalled in favor of re-interpreting Section 301 so as to read in it an implied exception to the prohibition of the Norris-LaGuardia Act. It is said that the two statutes must be "accommodated" and the Railway Labor Act, 45 U.S.C.A. § 151 et seq., cases are cited as precedent. See Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622. See also Virginian Ry. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Brotherhood of Locomotive Engineers v. M.-K.-T. R. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379. Also invoked is the holding of Lincoln Mills that the procedural requirements of Section 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107, are "inapposite" in a suit under Section 301 of Taft-Hartley for a mandatory injunction to compel an employer to arbitrate. And heavy reliance is placed on the statement in Lincoln Mills, repeated in subsequent cases (United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1363, 4 L.Ed.2d 1432; United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed. 2d 1409, note 4), that the arbitration clause is the *quid pro quo* given by the employer in return for the no-strike clause agreed to by the union, from which it is argued that the latter provision is also specifically enforceable.

But none of this amounts to a pronouncement that the express prohibition of the Norris-LaGuardia Act will be cast aside to permit enjoining a strike when such action violates a provision of the collective bargaining agreement. The Railway Act exception was made in the light of an explicit provision in the later enactment making arbitration of "minor disputes" compulsory and declaring the Adjustment Board's decision "binding upon both parties," [4] and it has been narrowly confined within the limits of that requirement. See Order of R. R. Telegraphers v. Chicago & N. W. R. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774.

As for Lincoln Mills, an obvious distinction exists between the holding there that Section 7 of the Norris-LaGuardia Act may be circumvented and the suggestion here that Section 4 of the same Act should be ignored. It is one thing to get around procedural rules when they appear "inapposite" and quite another to ride roughshod over a categorical prohibition. Nor is the argument based on

3. 29 U.S.C.A. § 104(a), which provides as follows:
"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;"
It is plain that this is a "case involving or growing out of [a] labor dispute" within the meaning of the Section. See 29 U.S.C.A. § 113(a), (b) and (c). Plaintiff does not seriously contend otherwise.

4. 45 U.S.C.A. § 153, First (m). See Brotherhood of Trainmen v. Chicago R. & I. R. Co., supra, 353 U.S. 33–39, 77 S. Ct. 635.

the balancing of arbitration and no-strike provisions compelling. Despite the apparent attraction of symmetrical solutions, there may be good reasons for granting specific enforcement in one case and not in the other.[5] Several members of the Court have already disassociated themselves from what may be called the "*quid pro quo* doctrine"[6] and even the majority in a recent opinion cites as an example of the proper sanction for the breach of a no-strike clause a case in which only damages were awarded. See United Steelworkers of America v. American Mfg. Co., supra, 363 U.S. 567, note 4, 80 S.Ct. 1363, citing Structural Steel & Ornamental Iron Ass'n of New Jersey, Inc. v. Shopmens Local Union, D.C.D. N.J., 172 F.Supp. 354.

Thus, it is not at all clear what the Supreme Court will hold when presented with the question posed here. Reading very broadly the directive to resort to "judicial inventiveness" in "fashioning a remedy that will effectuate" "the policy of our national labor laws," one Court of Appeals has interpreted Lincoln Mills as authorizing a lifting of the Norris-La-Guardia ban on anti-strike injunctions when there is a breach of a covenant not to strike. Chauffeurs, Teamsters and Helpers Local 795 v. Yellow Transit Freight Lines, 10 Cir., 282 F.2d 345.[7] Another Circuit has ruled otherwise, basing its opinion, with what seems appropriate reliance, on the fact that in adopting the Taft-Hartley law the Congress deleted the House provisions making the Norris-LaGuardia Act prohibitions inapplicable to suits under § 301. A. H. Bull Steamship Co. v. Seafarers' Internat'l Union, 2 Cir., 250 F.2d 326. But it is no use predicting. Even if this court read the weather vane as indicating a judicial overruling of the Norris-LaGuardia Act

in these situations and thought that solution desirable, it could not presume to ignore the plain mandate of applicable statute in order to achieve a result in accord with its private view of what the law ought to be. Perhaps that privilege belongs to a higher court. Or perhaps Congress itself should be permitted to do its own legislating.[8]

Application for injunction denied.

---

5. See, e. g., The Supreme Court, 1956 Term, 71 Harv.L.Rev. 83, 174, 176, n. 511.

6. See Mr. Justice Brennan, joined by Justices Frankfurter and Harlan, concurring in United Steelworkers of America v. American Mfg. Co., supra, 363 U.S. 564 ff, 80 S.Ct. 1363.

7. See also Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1484–1485.

8. See Wellington, Judge Magruder and the Labor Contract, 72 Harv.L.Rev. 1268, 1277–1281.