Kenneth ABRAMS, et al., Plaintiffs,

v.

COMMUNICATIONS WORKERS OF AMERICA (C.W.A.), Defendant.

Civ. A. No. 87–2816 (RCL).

United States District Court, District of Columbia.

Oct. 25, 1988.

On Motion to Reconsider or for Injunction Pending Appeal

Nov. 7, 1988.

Hugh L. Reilly, Nat. Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs.

James B. Coppess (argued), Michael T. Leibig (with him on the brief), Washington, D.C., for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiffs in this action have filed a complaint on behalf of themselves and putative class members alleging that defendant has violated the first amendment, the National Labor Relations Act (NLRA) § 8(a)(3) and the duty of fair representation owed by the defendant to plaintiffs. Plaintiffs are employees of private telephone companies who work in collective bargaining units represented by Communications Workers of America (CWA) and pay agency fees to CWA pursuant to collectively bargained union security provisions.

Plaintiffs maintain that the current collection of agency fees is in excess of the amount of such fees which the union spends on collective bargaining activities and thus violates the first amendment, the NLRA, and the duty of fair representation. Defendant acknowledges the collection of fees in excess of those needed to support collective bargaining activity, but maintains that because the excess is not spent on non-collective bargaining activity, but rather held in an interest-bearing escrow account to be later refunded to plaintiffs, defendant is not in violation of any duty to plaintiffs. Defendant further maintains that no state action is involved such as to

make defendant subject to the first amendment.

Defendant has filed a motion to dismiss, and plaintiffs have filed a motion for a preliminary injunction. The Court addresses each of these motions in turn.

## I. Defendant's Motion to Dismiss

### A. First Amendment Claim

■ Plaintiffs' complaint, the facts of which are taken as true for purposes of this motion, alleges that the agency fees collected by defendant are spent on political and ideological activities not authorized by plaintiffs, in violation of plaintiffs' first amendment rights. Defendant argues that, insofar as plaintiffs' complaint states a first amendment claim, that complaint fails for want of state action.

This issue was recently before the Supreme Court in *Communications Workers of America v. Beck*, ⸺ U.S. ⸺, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). In that case, the court found that the exaction of agency fees from dissenting employees in excess of the amount spent for collective bargaining activities violated § 8(a)(3) of the NLRA, but declined to reach the first amendment question. In light of the Supreme Court's failure to settle the issue, this court agrees with defendant that the holding of the D.C. Circuit in *Kolinske v. Lubbers*, 712 F.2d 471 (D.C.Cir.1983) controls, and has not, as plaintiffs suggest, been overruled *sub silentio* or successfully distinguished on its facts.

In *Kolinske*, the Court of Appeals addressed the issue of whether the defendant union violated the constitutional rights of the nonmember employee plaintiff when it refused to pay him strike benefits. Plaintiff had refused to participate in any strike activities except to honor the picket line. The strike benefits were paid from fees collected under an agency shop clause similar to the one at issue in this action. The Court of Appeals addressed at length the issue of whether or not the agency shop clause negotiated between a private union and a private employer pursuant to the NLRA constituted state action. This discussion encompassed all but one of the line

of cases relied upon by plaintiffs, beginning with *Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956) and ending with *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

This line, which also includes *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) and *Brotherhood of Railway and Steamship Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963), all involve the interpretation of and limit on union security provisions under the Railway Labor Act (RLA). In *Hanson*, according to the *Kolinske* court, the preemption by the RLA of a state law outlawing union shop laws constituted state action. The Court found that in preempting the state law the government created a right or privilege on the part of the union the exercise of which deprived the nonmembers of his constitutional rights. *Kolinske*, 712 F.2d at 476. In *Street* and *Allen*, the Court avoided the plaintiffs' constitutional claims by interpreting Section 2(11) of the RLA to prohibit the use of fees collected from dissenting employees under union security agreements for non-collective bargaining purposes. The *Kolinske* court found that unlike the RLA, the NLRA expressly preserves the power of the states to outlaw union security laws. Therefore, the Court concluded, the preemption theory of state action discussed in *Hanson* was inapplicable to cases arising under the NLRA.

More troubling to the *Kolinske* court, and to plaintiffs in the present action, is the Supreme Court's expansive dicta in *Abood*, in which the court stated that "differences between public- and private -sector bargaining simply do not translate into differences in First Amendment rights." 431 U.S. at 232, 97 S.Ct. at 1798, *quoted* in *Kolinske* at 476. The appellees in *Kolinske*, like plaintiffs here, urged the court "to adopt the full sweep of that dictum from *Abood* and apply the first amendment full force...." 712 F.2d at 476. The *Kol-*

*inske* court declined to do so, for reasons which remain persuasive today.[1]

Plaintiffs argue that *Kolinske* has been overruled by the Supreme Court *sub silentio* in *Ellis v. Railway Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). In *Ellis,* another RLA case, the court applied constitutional restraints to the collection and expenditure of agency fees, despite the fact that they were collected from employees in California, which does not have a right to work law. Because California does not have a state law to preempt, plaintiffs argue, the rationale which supported state action in *Hanson,* and upon which the *Kolinske* court relied, is no longer tenable.

This court does not read *Ellis* so broadly. As the Supreme Court most recently pointed out in *Beck:*

> [W]e ruled in *Railway Employees' Dept. v. Hanson,* 351 U.S. 225 [76 S.Ct. 714, 100 L.Ed. 1112] (1956), that because the RLA pre-empts all state laws banning union security agreements, the negotiation and enforcement of such provisions in railroad industry contracts involves "governmental action" and is therefore subject to constitutional limitations.

— U.S. at ——, 108 S.Ct. at 2656. The NLRA, the Court notes, differs from the RLA in this respect "for § 14(b) of the NLRA expressly preserves the authority of states to outlaw union security agreements." *Id.* The distinction thus appears to lie more in the statutory language itself, rather than, as plaintiffs suggest, whether or not a state actually has a statute which the RLA preempts.

Defendant cites two other cases, cited in both *Kolinske* and *Beck,* which support defendant's reading of *Kolinske* and the proposition that actions of private unions covered by the NLRA are not state action. In *Steelworkers v. Sadlowski,* 457 U.S. 102, 121 n. 16, 102 S.Ct. 2339, 2350 n. 16, 72 L.Ed.2d 707 (1982), the court noted that a union's decision to adopt an "outsider rule" —prohibiting contributions from nonmem-

bers to candidates for union office—did not involve state action. Similarly, in *Steelworkers v. Weber,* 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979) the court found an affirmative action plan adopted into a collective-bargaining agreement was not subject to constitutional scrutiny. Although neither of these cases involved § 8(a)(3), they support the contention that union rules governed by the NLRA do not involve state action. *Beck,* — U.S. at ——, 108 S.Ct. at 2656; *Kolinske,* 712 F.2d at 476–77.

Lastly, plaintiffs attempt to distinguish *Kolinske* on its facts, adopting the distinction made by Judge Murnaghan in the concurrence in *Beck v. C.W.A.,* 800 F.2d 1280 (4th Cir.1986). Whereas the union's decision not to distribute strike benefits to Kolinske could be "characterized as an internal union matter because the authority to make and enforce that decision lay solely with the union", the collection of agency fees is enforceable only by threat of action from the employer and stems from an agency contract that exists only by virtue of federal law. *Id.* at 1287 n. 8 (Murnaghan J. concurring); *Beck v. C.W.A.,* 776 F.2d 1187, 1205 (4th Cir.1985).

Even accepting this distinction as meritorious, it does not serve in itself to make actions under § 8(a)(3) constitute state action for two reasons. First, the argument fails to distinguish *Weber, supra,* in which an employer was intimately involved in enforcing the terms of the affirmative action plan incorporated into the collective-bargaining agreement. Like agency shop clauses under the NLRA, federal law merely authorizes such agreements, but does not mandate them, and thus no state action is involved. Second, because *Kolinske* and *Beck* both involve § 8(a)(3) issues, drawing a distinction between them does not advance the idea that all actions under § 8(a)(3) involve state action, as appears to be the case under the RLA § 2(11). Thus, this distinction is only a factor to be considered in determining whether state action

---

1. The *Kolinske* court distinguished *Abood* for several reasons, noting that the *Abood* court did not face the issue of state action, and that the *Abood* court itself pointed out that *Hanson* and *Street* were RLA cases, and that no similar preemption provision existed under the NLRA. *Id.*

exists in *this* case, under the test set forth in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and followed in *Kolinske,* 712 F.2d at 477.

The first part of the *Lugar* test examines whether the alleged deprivation of constitutional rights is caused by "the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible. The second part of the test asks whether the person responsible for the deprivation may be held to be a state actor, *e.g.* the actor performed a traditional public function, was compelled to act by state law, or acted in concert with the state. 457 U.S. at 937, 102 S.Ct. at 2753. In *Kolinske,* the court found neither part of the test satisfied, in that there was "no direct governmental involvement in either the parties' adoption of or their continued adherence to the agency shop clause." 712 F.2d at 479. The *Kolinske* court's analysis applies fully to the instant case, and plaintiffs' distinction on the facts does not affect the analysis. *See also* the discussion in *Kolinske,* 712 F.2d at 479–80, of *Blum v. Yaretsky,* 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), and *Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (holding that extensive state regulation did not of itself render the regulated party's activities state action).

### B. The § 8(a)(3) Claim

■ Defendant challenges plaintiffs' § 8(a)(3) claim on the grounds that the National Labor Relations Board (NLRB) has primary jurisdiction over this claim. Defendant correctly relies on *Beck* which affirms this general rule. —— U.S. ——, 108 S.Ct. at 2646–48. The *Beck* Court goes on to recognize, however, that federal courts may resolve such questions as "emerge as collateral issues in suits brought under independant federal remedies," such as the judicially implied duty of fair representation. *Id., quoting Connell Construction Co. v. Plumbers,* 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975).

In *Beck,* under circumstances nearly identical to this case, the Court found that "the necessity of deciding the scope of § 8(a)(3) arises because *petitioners* [the union] seek to defend themselves on the ground that the statute authorizes precisely this type of agreement [an agency shop agreement authorizing the exaction of fees unrelated to collective bargaining]." Under these circumstances, the Court held that the federal court had jurisdiction "to decide the § 8(a)(3) question raised by respondents' duty of fair representation claim." *Id.* This court finds *Beck* indistinguishable on this point, and thus finds jurisdiction to the extent allowable under *Beck.*

### C. Duty of Fair Representation

Although defendant challenged this claim in its original motion to dismiss, it has since acknowledged that plaintiffs' claim for breach of the duty of fair representation states a cognizable claim under *Beck.*

For the reasons set forth above, defendant's motion to dismiss will be granted as to plaintiff's first amendment claim, and denied as to plaintiffs' § 8(a)(3) and duty of fair representation claims.

### II. Preliminary Injunction

■ Plaintiffs' motion for a preliminary injunction follows hard on the heels of the Supreme Court's decision in *Beck, supra.* In that case, the Court held that Section 8(a)(3) of the NLRA prohibits a union from exacting, over the objection of nonmember employees, any agency shop fees beyond those necessary to finance collective bargaining activities. Plaintiffs here seek to enjoin defendant from collecting such fees. Under the present arrangement, the union collects from the plaintiffs an amount equal to the dues of union members, but holds a portion of the fee in an interest-paying escrow account. When defendant determines the percentage of the union budget not spent on collective bargaining activities, that percentage of the fee is refunded to plaintiffs and other objecting employees.

Defendant concedes that, after *Beck,* plaintiffs have stated a claim for breach of the duty of fair representation. Indeed,

defendant avows that it will change to an advance-reduction method of collection in 1989, and argues that the delay is necessary only for administrative convenience. The court is troubled by its perception that defendant's collection system does not meet the requirements of *Beck* and by defendant's delay in so conforming the system. Nonetheless, even assuming that plaintiffs are likely to prevail on the merits, plaintiffs are not entitled to a preliminary injunction for two reasons. First, plaintiffs have failed to show the traditional common law requirement of irreparable harm necessary to the remedy of injunctive relief. See *Virginia Petroleum Jobbers Assoc v. Federal Power Com'n*, 259 F.2d 921, 925 (D.C.Cir.1958). Second, plaintiffs have not shown "special circumstances" such as to merit an exception to the well-recognized federal labor policy against injunctive relief in the area of labor disputes. See *Railway Clerks v. Allen*, 373 U.S. 113, 120, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963).

Plaintiffs claim that the payment of the excess fees into defendant's escrow account deprives them of the use of the money for their own political, charitable and other expenditures. This deprivation has been recognized as a first amendment claim. *Seay v. McDonnell Douglas, Corp.*, 427 F.2d 996, 1004 (9th Cir.1970). As the court found above, however, plaintiffs' first amendment claim is simply not cognizable in this action, where no state action is involved. Plaintiffs' claim thus becomes simply one for money damages, and it is well-recognized that money damages are rarely, if ever, irreparable. *Virginia Petroleum*, 259 F.2d at 925.

In addition, the stated harm is to some degree inevitable. Were the court to grant the injunction, plaintiffs would be required to post a bond equal to the money plaintiffs claim is being wrongfully exacted from them. 29 U.S.C. § 101; F.R.C.P. 65(c). Plaintiffs concede that they would be unable to post a bond in that amount for the 50,000 putative class members, and suggest alternatively that they pay the contested fees into the registry of the court. The court declines to adopt this burden-some suggestion and notes that, were it to do so, the resulting burden to plaintiffs would be exactly the same. The defendant is not expending fees over their objections, but only depriving them of money which they would otherwise use for their own purposes. The preliminary injunction sought by plaintiffs would provide no remedy for this harm, as the money would be paid into the registry of the court and plaintiffs would still be deprived of its use.

Plaintiffs also fail to show that the "public interest," which they claim is in enforcing the limited-purpose collections required under *Beck*, outweighs the federal labor policy against injunctions as recognized in *Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) and *Railway Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963). In *Street* and *Allen*, the court found that the expenditure of agency shop fees on non-collective bargaining activities violated the RLA § (2)(11). The *Beck* court relied heavily on these decisions in holding that the NLRA § 8(a)(3) prohibited the exaction of fees for such purposes.

In *Street*, however, the Court went on to find that the use of an injunction to prohibit the collection of any fees was improper. This would be true, the Court added, even where the injunction would be subject to modification to permit collection of that portion of the fee that the union could show were spent on collective bargaining activities. 367 U.S. at 771–72, 81 S.Ct. at 1801. In *Allen*, the court likewise found an injunction improper, stating that "lest the important functions of labor organizations under the Railway Labor Act be unduly impaired, dissenting employees (at least in the absence of special circumstances not shown here) can be entitled to no relief until final judgment in their favor is entered." 373 U.S. at 120, 83 S.Ct. at 1163.

This policy against interfering prematurely with union activities, which the Supreme Court has recognized under the RLA, is equally applicable under the NLRA. Cases cited by plaintiffs in which an injunction was found appropriate are first amendment cases and are thus inappli-

cable. *See Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987), *Lowary v. Lexington Local Bd. of Educ.*, 854 F.2d 131 (6th Cir.1988). Although first amendment claims may properly override the anti-injunctive concerns of *Street* and *Allen,* plaintiffs' *Beck* concerns do not.

For the reasons stated above, plaintiffs' motion for a preliminary injunction will be denied.

## ON MOTION TO RECONSIDER OR FOR INJUNCTION PENDING APPEAL

Following the denial of plaintiffs' motion for a preliminary injunction on October 25, 1988, plaintiffs orally moved this court to reconsider the denial, and, in the alternative, filed a written motion for an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(c). After giving consideration to the points raised by plaintiffs in the motion and by defendant in its opposition, and by both parties in open court, the court concludes that plaintiffs' motions must be denied.

Plaintiffs raise a total of nine bases for reconsideration of the propriety of an injunction in this case. These bases are divided between reconsideration of the plaintiffs' first amendment claim, and reconsideration of non-first amendment related grounds for denial of the preliminary injunction. With respect to the first amendment issue, plaintiffs submit that the court's reading of *Communications Workers of America v. Beck*, — U.S. —, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), "raises the specter" of serious violations of plaintiffs' fifth amendment rights. Because the court views *Beck* as preventing even the collection of agency shop fees unrelated to collective bargaining, plaintiffs argue that to allow such collections to continue, even if only until an adjudication of plaintiffs' rights on the merits, constitutes a deprivation of property without notice and hearing in violation of the fifth amendment. Plaintiffs argue that such collections would not occur but for the "condition of employment" language of the National Labor Relations Act § 8(a)(3) and that the resulting benefit to defendant from that language is, therefore, state action. Relatedly, plaintiffs contest the court's opinion that collective bargaining agreements between private employers and unions are *authorized*, as opposed to *mandated*, by federal law.

Plaintiffs' fifth amendment specter, in this court's view, is simply the ghost of plaintiffs' earlier first amendment claim, and is likewise ephemeral. The earlier claim argued that the collection of money under the "condition of employment" language violated plaintiffs' first amendment rights by preventing plaintiffs from using that money for their own political, charitable or other expenditures. Now plaintiffs rely on exactly the same rationale to provide state action in the collection of fees without notice and hearing.

This analysis clearly ignores the reasoning of *Kolinske v. Lubbers*, 712 F.2d 471 (D.C.Cir.1983), discussed at length in the court's first opinion, which involved facts even closer to plaintiffs' projected fifth amendment claim than to their original first amendment claim. In *Kolinske*, the plaintiff sued the union when it refused to pay him strike benefits. The Court of Appeals found no constitutional violation, not because of no deprivation of property, but because the "condition of employment" language of the NLRA was not found to constitute state action. Plaintiffs' citations of *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987) where a first amendment violation was found, but where the employer was *public*, are to no avail where no state actor is involved.

In another point, plaintiffs contest this court's adoption of what appears to be the still-honored distinction between the Railway Labor Act and the NLRA, namely that while the agency shop provisions of the RLA (§ 2, Eleventh) preempt state law and thus give rise to state action, the comparable NLRA provision merely authorizes such agreements. Unlike under the RLA, actions taken under the NLRA § 8(a)(3) have not been held to independently constitute state action. *See Beck, supra; Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112

(1956); *Steelworkers v. Sadlowski,* 457 U.S. 102, 121 n. 16, 102 S.Ct. 2339, 2350 n. 16, 72 L.Ed.2d 707 (1982); *Steelworkers v. Weber,* 443 U.S. 193, 200, 99 S.Ct. 2721, 2725, 61 L.Ed.2d 480 (1979); *Kolinske, supra* at 476.

Finally, plaintiffs cite *Steele v. Louisville & Nashville Railroad Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) and *J.I. Case Co. v. Labor Bd.,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1943), emphasizing in particular the metaphor used in *Steele* which compares the power and duty of unions to that of legislatures. These cases address the statutory duties imposed on unions and employers under the RLA and NLRA in furtherance of national labor policy. In *Steele,* the Supreme Court found the duty of a union not to discriminate statutorily imposed in part to avoid reaching the petitioner's constitutional claims. *Steele,* 323 U.S. at 198–99, 65 S.Ct. at 230. It is thus inconsistent to suggest that, in complying or not complying with these statutory duties, unions thereby become state actors.

Plaintiffs' second group of points relates to the court's denial of the preliminary injunction. Plaintiffs complain that, in suggesting that plaintiffs will prevail on the merits yet denying the preliminary injunction, the court in effect is saying "right writ, no remedy." Plaintiff further objects to the court's reference to the anti-injunctive provisions and policy of the Norris–LaGuardia Act, 29 U.S.C. § 101, and to the court's finding of no irreparable injury.

The court is not saying "no remedy." The court says, as did the Supreme Court, that "dissenting employees (at least in the absence of special circumstances not shown here) can be entitled to no relief until final judgment in their favor is entered." *Railway Clerks v. Allen,* 373 U.S. 113, 120, 83 S.Ct. 1158, 1162, 10 L.Ed.2d 235 (1963). *Allen,* like the case at bar, involved the collection and expenditure of agency shop fees for non-collective bargaining purposes.

Plaintiffs do not distinguish *Allen,* but instead cite two cases in which the Supreme Court found injunctions to be proper. These cases, *Steele, supra,* and *Graham v. Locomotive Firemen,* 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22 (1949), illustrate precisely the type of special circumstances referred to in *Allen.* Both *Steele* and *Graham* involve racial discrimination by unions. Injunctive relief is therefore appropriate, because, as the Supreme Court stated in *International Assoc. of Machinists v. Street,* 367 U.S. 740, 773, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961), "that remedy alone can effectively guard the plaintiff's right."

In appropriate cases, the Supreme Court has clearly stated that the Norris–LaGuardia Act does not forbid appropriate injunctive relief. (*Graham, supra* 338 U.S. at 240, 70 S.Ct. at 18). Indeed, by its own terms the Norris–LaGuardia Act does not bar injunctions, but merely calls for greater scrutiny and special safeguards in applying the remedy. But the Supreme Court has also held, in *Street* and *Allen,* that the type of monetary harm suffered by plaintiffs in the instant action does not survive that scrutiny; in other words, the furtherance of important labor functions under the RLA (and by analogy, the NLRA) outweigh the temporary monetary harm suffered by plaintiffs. The test for injunctive relief is not, as plaintiffs maintain, whether a violation of a statute has occurred. Rather, the test involves balancing, in order "to accommodate the conflicting policies of our labor laws", the harm resulting from the statutory violation with the basic anti-injunctive policy of the Norris–LaGuardia act. *Chicago & N.W.R. Co. v. Transp. Union,* 402 U.S. 570, 582, 91 S.Ct. 1731, 1737, 29 L.Ed. 2d 187 (1971). Regardless of the truth of the egregious facts plaintiffs allege with respect to C.W.A.'s accounting and administrative practices, these harms are clearly of the sort which can be most properly addressed and redressed on the merits.[1]

Finally, plaintiffs argue that their harm is not "inevitable", because, under *Tierney,*

---

1. Indeed, pursuant to the court's expressed concern regarding defendant's collection system, defendant has taken steps to immediately effect an advance-reduction method of collection. *See*

Third Declaration of Eileen Brackens, filed November 1, 1988. Although plaintiffs argue that the new system remains defective under *Beck,*

the court could order a three-tiered collection system which prevents illegal collections. The court offers no opinion on the ultimate adequacy of this remedy. The harm to which the court referred, however, is plaintiffs' loss of the use of their money regardless of whether a preliminary injunction issued, because of the bond requirements of the Norris–LaGuardia Act and Federal Rule of Civil Procedure 65(c). Although the court agrees with plaintiffs that Rule 65(c) allows the court some discretion in setting the bond requirement, the plaintiffs have cited no cases supporting such discretion under the Norris–LaGuardia Act. Plaintiffs' authority for waiving the bond requirement, *Damiano v. Matish*, 122 L.R. R.M. 3158 (W.D.Mich.1986) is a first amendment case and is thus distinguishable; moreover, if it does indeed waive the bond requirement it does so without discussion or analysis.

For the reasons stated above and in the court's memorandum opinion of October 25, 1988, the court finds plaintiffs have shown insufficient injury to warrant a preliminary injunction under the standards of *Virginia Petroleum Jobbers Asso. v. Federal Powers Com'n.*, 259 F.2d 921, 925 (D.C.Cir.1958) and the Norris–LaGuardia Act. Accordingly, plaintiffs' Motion to Reconsider or for an Injunction Pending Appeal is denied.

nevertheless it is clear that the harm to plaintiffs has been reduced as a result.